**Rhonda FEDER and Kenneth Feder, Plaintiffs,**

v.

**TARGET STORES, Target Corporation, Dayton Hudson Corporation and Westbury Holding Company, Defendants.**

**No. 11–CV–3675.**

United States District Court, E.D. New York.

Signed April 24, 2014.

John H. Lee, McNicholas & Lee, Shawn Michael Cestaro, McNicholas, Lee & Cestaro, P.C., Flushing, NY, for Plaintiffs.

Michael D. Kern, Sal F. DeLuca, Simmons Jannace L.L.P., Syosset, NY, John H. Lee, McNicholas & Lee, Flushing, NY, for Defendants.

*MEMORANDUM AND ORDER*

WILLIAM F. KUNTZ, II, District Judge.

Plaintiffs Rhonda Feder and Kenneth Feder bring this negligence action against Defendants Target Stores, Target Corporation, Dayton Hudson Corporation,[1] and Westbury Holding Company. Plaintiff Rhonda Feder alleges that she slipped and fell on a piece of plastic left on the floor of a Target store; her husband, Kenneth Feder, alleges that he suffered by paying for her resulting medical treatment and by loss of consortium. Defendants Target Stores, Target Corporation, and Westbury Holding Company (collectively, the "Target Defendants") now move for summary judgment. The Target Defendants argue that Plaintiffs have not established a *prima facie* case of negligence, and that Westbury Holding Company, as an out-of-possession landlord, did not owe Plaintiffs any duty. Defendants' Motion for Summary Judgment is DENIED as to negligence, but GRANTED as to Westbury Holding Company.

## I. Background

### A. Relevant Facts

This diversity action centers on a slip-and-fall incident in a Westbury, New York

---

1. Dayton Hudson Corporation was dismissed as a party without prejudice on April 1, 2013, *see* Dkt. 46, and is not addressed in this Order.

Target store. *See* Dkt. 1 ("Compl."). Plaintiff Rhonda Feder alleges that she was present in the Target store on February 5, 2011 when she slipped and fell on a plastic strap lying on the floor. Compl. at ¶ 73; Dkt. 65 at ¶ 3. The plastic tie that Rhonda Feder fell on was a 3–4 foot long, white plastic tie that "appeared … had been cut." Dkt. 63 Ex. L, 2; Ex. G1.

Target is divided into aisles, with two numbers assigned per aisle. *Id.* at Ex. J, 51. By this numbering system, Rhonda Feder's incident occurred in the back of Aisle D34, which was a "Domestic" aisle containing rugs. *See id.* at Ex. G(1); Ex. J, 51.

Target sold or used similar ties to the one on which Rhonda Feder fell. First, as Target employee Alan Yamaji testified, Target carried plastic strips similar to the one that Plaintiff slipped on to wrap coolers. *See id.* at Ex. H, 34–36. Those coolers were carried in a different section of the store from where Rhonda Feder fell, in the sporting goods section approximately 20 aisles away. *Id.* Second, Target employee Ana Brown testified that Target used "creamish" and "wider" plastic ties on its doormat boxes, which were, to the best of Brown's knowledge, located in Aisle 36. *See id.* at Ex. J, 30; 42–44; 52.

During Brown's "in-stock" responsibilities—e.g., when she was re-filling the shelves with products—she would cut the plastic straps on the doormat boxes with a boxcutter, open the box containing the products, and then restock the products onto the shelves. *Id.* at 43–44. Brown would then place the boxes and plastic ties into a regular shopping cart she had brought with her, and bring that shopping cart to the back of the store to dispose of the packaging materials. *Id.* at 45–46. When Brown performed these in-stock tasks, she would work in "every area," *id.* at 35, and occasionally she would stock from a cart that had mixed types of products. *Id.* at 47–48.

When Plaintiff's slip-and-fall incident occurred in Aisle D34, Brown was performing her in-stock duties and was on her way to throw out the garbage after stocking the shelves. *Id.* at 55. Brown could not remember specifically which section the garbage was from, but she did recall that it was a mix of "box and plastic." *Id.* at 55–56. Brown also recalled that she had gone through the aisle numbered 37–38 before going to the back storage area to drop off her garbage. *Id.* at 58.

## II. Analysis

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). No genuine issue of material fact exists where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d

156, 164 (2d Cir.2011) (internal quotation marks and citations omitted). The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform the "threshold inquiry of whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R.Civ.P. 56(c)(1)(B). The non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548 ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999); *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998); *Harlen Assoc. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) ("[M]ere speculation and conjecture is insufficient to preclude the granting of [a summary judgment] motion.").

### B. The Negligence Claim

Plaintiffs base their negligence claim on the Target Defendants' alleged maintenance of a "dangerous, hazardous, defective and/or unsafe condition." Compl. at ¶ 79.

■ Negligence is governed by New York state law, which requires a plaintiff to establish (1) that the defendant owed the plaintiff a cognizable duty of care; (2) that the defendant breached that duty, and (3) that the plaintiff suffered proximately caused damages, *King v. Crossland Savings Bank,* 111 F.3d 251, 255 (2d Cir.1997). In a slip-and-fall case, a plaintiff must demonstrate that the defendant created the condition that caused the accident, or that the defendant had actual or constructive notice of the condition. *Bykofsky v. Waldbaum's Supermarkets, Inc.,* 210 A.D.2d 280, 281, 619 N.Y.S.2d 760 (2d Dep't 1994) (cited in *Feis v. U.S.,* 484 Fed.Appx. 625, 628 (2d Cir.2012)). Finding that a defendant created that condition requires "some affirmative act" on the part of the defendant. *Gonzalez v. Wal–Mart Stores, Inc.,* 299 F.Supp.2d 188, 192 (S.D.N.Y.2004) (Koetl, J.) (citing *Fink v. Bd. of Ed.,* 117 A.D.2d 704, 498 N.Y.S.2d 440 (2d Dep't 1986)). Though a plaintiff cannot avoid summary judgment on this issue through mere speculation and conjecture, circumstantial evidence may be sufficient if it supports an inference of causation or negligence. *See Krichevskaya v. City of New York,* 30 A.D.3d 471, 472, 817 N.Y.S.2d 103 (2d Dep't 2006); *Olsen v. K Mart Corp.,* 04–CV–3648, 2005 WL 2989546, at *11–12 (E.D.N.Y. Nov. 8, 2005) (Azrack, M.J.).

■ Here, because a genuine issue of material fact exists as to the creation of the dangerous condition, summary judgment is inappropriate. *See Ohlsson v. JBC Bowl Corp.,* 99–CV–0890, 2001 WL 1117162, *4 (W.D.N.Y. Sept. 14, 2001) (Elfvin, J.) (if plaintiff presents evidence that defendant created the dangerous position, "plaintiff need not establish that defendant had either actual or constructive notice of such condition in order to recover"). Construing the facts in the light most favorable to the non-moving party, sufficient evidence supports the inference that Target was in fact responsible for the creation of the hazard. Target employee Ana Brown admitted that Target used similarly colored plastic ties to package its door-

mats.[2] As part of Brown's job, she would cut those plastic ties with a box cutter before stocking the products on the shelves. Notably, those doormats were apparently located in the aisle marked 36, which, given Target's dual-numbering system for its aisles, was just one aisle over from the rug aisle in which Plaintiff slipped (the aisle marked 34). Moreover, Brown testified that at the time Plaintiff slipped, Brown had just brought a cart of leftover packaging, e.g., boxes and plastic, through the nearby aisle numbered 37–38. These factual circumstances suggest that when the doormats were initially being restocked, or when garbage was being brought back through the aisles, a piece of plastic that had been cut from product packaging could have been left behind, causing Plaintiff's fall.

Further, it is notable for causation purposes that Plaintiff slipped on a 3–4 foot long, white plastic strip that appeared to have been cut. The size and nature of the item suggest that the strap had been used to bind products for shelving, and that an employee had cut it in the process of stocking shelves. Indeed, Target has not speculated that a customer dropped this strap, and it is unlikely that a customer would carry such an object around a Target store or be involved in the unpackaging and stocking of shelves. This factor further supports the inference that Target created the dangerous situation. *See Khalil–Mirhom v. Kmart Corp.,* 12–CV–5512, 2014 WL 173415, at *5 (E.D.N.Y. Jan. 13, 2014) (Ross, J.) (denying summary judgment in part because "the large wooden plank that Plaintiff allege[d] she tripped on [was] of such a size and weight that its placement necessitate[d] an affirmative act by someone.").

The circumstantial evidence in this case surrounding creation of the dangerous condition precludes summary judgment. *See id.* at *4 ("[C]ircumstantial evidence may be sufficient to make out a *prima facie* negligence claim if it supports an inference of causation[.]") (internal citations omitted); *Olsen,* 2005 WL 2989546, at *11–12 (denying summary judgment because circumstantial evidence made it "quite possible that a reasonable jury could infer that the hazard was created by a K Mart employee"). Because there is evidence supporting Target's culpability for the fallen plastic strip, this case is factually distinguishable from those in which a hazard existed, with no evidence of how it was created or who was responsible for it. *See, e.g., Cousin v. White Castle Sys., Inc.,* 06–CV–6335, 2009 WL 1955555, at *6–7 (E.D.N.Y. July 6, 2009) (Azrack, M.J.) (granting summary judgment because aside from the presence of a folded-up caution sign and a self-service beverage station, there was no evidence of "any employees carrying or handling liquids within the interior of the restaurant at any time prior to or after the fall and there [was] no evidence of employees mopping, making repairs, or engaging in any other activity that could have caused a puddle to form"); *Buskey v. Boston Mkt. Corp.,* 04–CV–2193, 2006 WL 2527826, at *5 (E.D.N.Y. Aug. 14, 2006) (Johnson, J.) (no triable issue of material fact where plaintiff slipped on water in a restroom and there was a bucket behind a toilet, but there was no indication that any nearby employee had been fixing a leaking pipe). Here, there is a factually supported, reasonable narrative supporting Target's creation of the hazard. This is sufficient to deny summary judgment.

**2.** Brown identified the ties as being "creamish" color and "wider," but she was unable to more specifically distinguish them from the tie on which Plaintiff slipped. Dkt. 63 at Ex J, 29–30.

### C. Liability of Westbury Holding Company

Defendants argue that as an out-of-possession landlord, Westbury Holding Company cannot be held liable for Plaintiff's fall and should be dismissed from this case. The Court agrees.

 Generally, an out-of-possession landlord may not be held liable for a third party's injuries on its premises unless it has notice of a defect or has consented to be responsible for maintenance or repair. *Slaven v. Mee Noodle Shop & Grill, Inc.*, 96–CV–0374, 1998 WL 661477, at *4 (S.D.N.Y. Sept. 24, 1998) (Martin, J.) (citing *Canela v. Foodway Supermarket*, 188 A.D.2d 416, 591 N.Y.S.2d 834 (1st Dep't 1992)). Here, the lease documents reflect that lessor Westbury was responsible to maintain appurtenances to the land, structural and non-structural parts of the common areas other than the leased premises, and utility lines other than those lines located solely in the leased premises. *See* Dkt. 63 at Ex. O, § 9.1. By contrast, the lessee was responsible for maintaining "all structural and non-structural portions of the Leased Premises." *Id.* at § 9.2. This allocation of responsibility defeats a finding of liability against Westbury. *See Ohlsson*, 2001 WL 1117162, at *5 (granting summary judgment because out-of-possession landlord had no possession of premises and had no duties or responsibilities as to its maintenance).

Plaintiffs' attempts to argue otherwise are futile. Plaintiffs first argue that by the lease, Westbury retained the right to complete all repairs to the land. However, caselaw makes clear that this reservation of right is insufficient to confer liability. *See Canela*, 188 A.D.2d at 416, 591 N.Y.S.2d 834 (a landlord's contractual reservation of right to reenter for general inspection purposes, unrelated to any affirmative obligation to maintain or repair, does not confer control over the premises

sufficient to impose liability); *Miller v. Astucci U.S. Ltd.*, 04–CV–2201, 2007 WL 102092, at *8 (S.D.N.Y. Jan. 16, 2007) (Berman, J.) (property owner's right, but not obligation, to enter premises to make repairs was insufficient to confer liability on owner). Plaintiffs then argue that the lease does not address the proper parcel of land. This argument fails too, because the typographical error Plaintiffs refer to was corrected by subsequent amendment. *See* Dkt. 63 at Ex. O, ¶ 3; Ex. O1. Because Plaintiff presents no viable arguments as to why Westbury, as an out-of-possession landlord, may be held liable, summary judgment is granted as to Westbury. Plaintiffs' request for costs in opposing this portion of the summary judgment motion is denied.

### III. Conclusion

Because a triable issue of fact exists in this case, Defendants' motion for summary judgment as to negligence is DENIED. However, Defendant's motion for summary judgment as to Westbury Holding Company is GRANTED.

***SO ORDERED.***